The first case that we will have today is United States v. Akers. It is Docket 21-3226 and Appellant Counsel is appearing by Zoom. Are you able to hear me okay? Good morning. Good morning to you. Thank you for participating. And if you have any difficulty with sound or anything, just wave your hand and we'll stop the proceeding until we get corrected. Thank you, Your Honor. I really appreciate the fact that they just allowed me to appear by Zooming. You're certainly welcome. And I guess we're ready to hear your argument whenever you're ready to begin. May it please the Court. Counsel, my name is Cantalina Akers. Mr. Akers started serving his sentence in federal prison in 2006. Since then, he has appeared in front of this Court and the District Court on various occasions. But this appeal is related to an event that happened right after the pandemic started. In summer of 2020, Mr. Akers filed a motion for compassionate release. If the Court recalls, that was right after we were all in the middle of the pandemic. Everybody was concerned. And one of the biggest issues was what to do with the prison population during those times and the spread of COVID. It is undisputed in this case that Mr. Akers has two serious conditions, a heart condition and asthma. And CDC has been very specific in listing both of those as items that would increase the risk if a person contracted COVID. During that period of time, many of our district courts were dealing with motions filed by prisoners based on that risk. And Mr. Akers was one of them. He filed a motion asking the Court for compassionate release based on the high risk that it would cause if he caught it. The District Court denied that motion. While the appeal of that denial was pending before this Court, he filed a motion for appeal bond. And this sanction today is related to that motion. Ms. Donnelly, may I ask a question about what the sanction is related to? You said that it's related to the bond motion in this case. Is that right? Or was the sanction actually for abusive litigation conduct by Mr. Akers over a longer period of time? Well, the Court explained that I am issuing the sanction because of also the history of what was happening. And one of the issues that we are dealing with right now is that can a court sanction a litigant, a prosaic litigant, based on their previous conduct? It's as if saying that you're going to file criminal charges because somebody is a habitual criminal. You still have the privilege to prove that something happened. Ms. Donnelly, what is the source of authority for the sanction in this case? I apologize, I couldn't hear you. What is the source of authority for the sanction imposed in this case? The Court relied on its inherent power to impose sanctions. But there is no doubt that it was related to the appeal bond motion. The sanction was not issued when the initial motion for compassionate release was denied. It was issued when he filed the motion for appeal bond while that appeal was pending. And the panel of this Court, including Judge Phillips, found that yes, the Court was correct in denying the appeal bond motion, but it also made a note that is extremely important, which was that the arguments that Mr. Akers made were not wholly frivolous. That he had a point, and that's why I provided that background for the Court, that at the same time, many of the courts in this country, including the 10th Circuit and the lower courts within the 10th Circuit, have granted such motions. So Mr. Akers' motion was not wholly frivolous. This Court acknowledged it on remand. The District Court acknowledged that. But the problem is that one, it didn't talk about what is the authority, the legal authority within this Circuit that would allow issuance of the $40,000 sanction against a federal prisoner when there's acknowledgment by this Court and the District Court that the motion was not wholly frivolous. So that is the first question for today. And if there is no question, we have time. Ms. Sonnen, may I ask you about that? So is it your position that the District Court does not have inherent authority to sanction if a filing is partially frivolous? So in other words, in order to impose a sanction, the District Court must find, under its inherent authority, that a filing is wholly frivolous? Is that your position? So the 9th Circuit deals with that issue as the proportionate of the motion that is or is not frivolous. So we cited the Stitt case. In Stitt, the Court says, and remember that in that one, you don't even have the leniency that is afforded to the pro se litigants. That is the case that most parties are represented by counsel. And the 10th Circuit says, so you have a portion of the arguments that are frivolous, a portion of it that are not frivolous. So we're going to look at it and see if the proportion of the ones that are not frivolous is higher, then sanctions are not appropriate to begin with. The question of whether there is inherent power, I think that's a separate one. The Court always has inherent power. The question is, under what circumstances that it abuses that power? So in the power argument? In the 9th Circuit case that you referenced, what was the source of authority for the sanction? Was it analyzed under Rule 11, or was it analyzed under inherent authority? The 9th Circuit one is Rule 11, but the 5th Circuit one is not Rule 11. Okay, so where I'm stuck here is, it seems that under farmer and chambers, when a district court exercises its inherent authority to impose a sanction, there has to be a finding of bad faith. Is that a correct statement of the law? Correct. That's one of the factors. So that's a separate question. So the first one was, isn't such sanctionable conduct? Because if it is not sanctionable, if we agree that majority of courts do not sanction litigants, especially pro se litigants, if the majority of the arguments make a portion of it, if the majority of the arguments are represented by counsel, I'm hoping that the Court agrees that we would have more leniency when you have pro se litigants who cannot recognize and draw the line as to what is legally frivolous and what is not. But the issue is that if you have enough, the core of your arguments were not frivolous, then is sanction appropriate to begin with? So if you answer that question to yes, because if it is no, you're done, right? If you agree with the 9th Circuit and the 5th Circuit analysis and say sanctions are not reasonable sanctions, then farmer replies, we have established case law within the 10th Circuit that is very specific, uses the language must. It doesn't say may. It doesn't say it's one of the factors. It says that the Court must consider the reasonableness, must consider that this is a minimum sanction that will give us the result that we want, and must consider the ability to pay. So you have three musts that will be considered if you answer the first question as yes. Obviously, the Government agrees, and I can correct if I'm wrong, I'm sure, within the next 15 minutes, that the Court did not go through those steps. The Court did not acknowledge this, and part of this problem started long ago. In 2019, the District Court issued a $76,000 sanction against Mr. Akers, and that sanction, again, was never challenged on the issue of reasonableness, appropriateness, maybe the fact that it didn't even meet this farmer's test, but it was because you have another prosaic appeal, and the issue was not raised. So this Court never had the opportunity to address that question, and the District Court kind of continued on this premise that yes, we can impose these sanctions, and we can go higher and higher, and the reality of it is that you have prisoners, you know, he might be released by 2027. How can, I mean, in a world that we know is impossible for prisoners to be rehabilitated and actually enter the society without a debt, how can you expect anyone to enter and have a normal life with a debt accumulated based on these sanctions, where the Court knows that this That is how you distinguish the 2019 affirmance of the $78,000 plus sanction, is that the same argument wasn't presented to the Court as you're presenting now. Correct, and actually, I think the Court specifically makes a note that there is no argument, and there was no argument made about the propriety of the sanction, the amount of And that's how that kind of stayed in there, and then the Court kind of applied that and said, okay, now you can just increase this, so any time that he does something that you don't win at this point, right, because it's not even getting into, okay, is it wholly frivolous or not, so pretty much any time that Mr. Anchors does something that he doesn't win on it, then the Court can increase the sanctions, and it cannot be for all these reasons that Farmers tells us, I apologize Did I miss a question? No, I apologize for interrupting you. Are you saying that Farmer does not require bad faith, but it requires consideration of whether or not there was bad faith as merely a factor? Well, I have to actually go back, I believe that Farmer's language was to the bad faith piece of it. But my question is, is that a mere, my question is, is bad faith a mere factor, or much like an element? It seems to me that, you know, when you have the must language for the reasonableness, in the absence of bad faith, the sanction of $40,000 for a prisoner would never be reasonable, so bad faith, I would treat that to be as one of the factors that are considered in the analysis of the reasonableness. Ms. Donnelly, is that right? I mean, and maybe I have the, my understanding is wrong, but I thought that the first question we have to answer is what is the source of authority for the district court sanction here? And if it's inherent authority, it seems that Chambers requires a showing of bad faith, and Farmer, which is based on Chambers, assumed that there was bad faith conduct. So once we establish the authority to sanction, then we go to the second part of the inquiry, whether, which is these four must mandatory factors. I agree that Farmer is a and so forth. I agree, Your Honor, because, you know, going back to that first question as to, you know, okay, in the absence of bad faith, and so we have the additional piece of it that is parallel, so if you don't have bad faith, then you don't get to the second part of the analysis of whether this really existed. Also, if the, so the parallel piece of it is that if you have some non-frivolous grounds, then it cannot be in bad faith, right? So I see them as parallel overlapping. Well, that's, that's, that's, that's, I'm not sure about that. I, I, why is bad faith sort of coextensive with frivolity? I mean, it seems like bad faith could mean abuse of the process, much like Mr. Akers, you know, that the record shows that there, that there is some I apologize. No, I'm just asking you if you think that bad faith is the same thing as frivolity. I do not think it is the same, but I'm saying that if you have non-frivolous grounds, by definition, it cannot be in bad faith. That I, I would disagree that you can continue sanctioning litigants, closing the door, and violating their due process rights because of their past conduct. This Court has never looked at the past conduct in order, in disregard of the current issue before it. And that's exactly what the district court did here. The district court said, I really don't care if you're cutting this motion. Sorry, go on. Ms. Donnelly, does Rule 11 require bad faith? Um, I would have to, I didn't look at this in the context of Rule 11, Your Honor. Um, I don't believe it does. Well, yes, let me, let me ask you to do this. Assume that the Rule 11 does not require bad faith. Well, you'll get your time. Assuming Rule 11 does not require bad faith, then doesn't that necessitate uh, some designation of whether the reliance of the Court is on Rule 11 or its inherent authority? And if there's no identification of one or the other, uh, it's up to the litigants to say, well, you need to say what's the source of your authority. If they don't do that, then that is forfeited. Is that correct? I mean, I don't say that. Is that an improper analysis? Well, there are, if, if the procedural piece here is a little bit, um, distinctive because the Court remanded this issue, there was no additional briefing. It sat there and then the District Court ruled on it. So there was no opportunity for any issue raising the question of what authority you're relying. So I'm not quite sure if I can answer that question, but where the Court has the obligation to make it clear as to what it is relying on as a source of its authority and to explain how it is not abusing its discretion, which is, I think, I believe that's why Farmer is very clear as to what you should be putting in your opinion. And it is undisputed that the Court did not pretty much said, you're a bad person. I'm going to punish you and I'm going to keep punishing you unless you amend any of these motions. I just have one, one more question. Is, is this the first time that Mr. Akers has had appointed counsel in connection with his sanctions litigation? As far as I know, as far as I'm aware, I looked at it and I couldn't actually find a case where he had actually been represented. This is a part of the problem. Thank you, Ms. Donnelly. Mr. Moss. Good morning, Your Honors. May it please the Court, Jared Magg on behalf of the United States. Judge Rossman, in answer to your question, yes, this is the first time Mr. Akers has had appointed counsel. I think this Court is, I think, acutely aware of the fact that Mr. Akers has been a prolific filer, both in this Court and the Court below. So, but I wanted to lay the groundwork because I think where the Court's concern may be is where the authority comes from. Government's position that it comes from 28 U.S.C. 1651, that this really is, when you look at sanctioned cases with defendants, you don't find a lot of situations where you're looking at a Rule 11 type of authority that the Court's using. So, we believe that it's the Court's inherent authority under that statute which sort of drives this in large part. And because of the Court's inherent authority, I think the position that we are taking as the government, and it's a little awkward here because we don't really have a dog in this fight. We didn't ask for the sanctions. This is something between the Court and the defendant. But, you know, I want to be as helpful as I can to sort of lay the groundwork as to why this was, why we think this was appropriate. But at the end of the day, we think when the Court has inherent authority, the Court has to give quite a bit of deference to the District Court's ability to know how to sanction, as it were. And so... Isn't it just the opposite? I mean, haven't we said in the Supreme Court, as instructed, that inherent authority has to be exercised in a very measured way? That it doesn't suggest, that its existence doesn't suggest that it has sort of an expansive frame, right? Absolutely. There's no sort of arbitrariness to it. This can't be a situation where a court can, say, sanction him a million dollars or something to that effect. So we're very much in agreement there. But why not? I mean, unless the Court considers reasonableness, it certainly, that does seem like it would be arbitrary perhaps upon review. But there doesn't seem to be any constraining principles, at least that the Court was aware of here, that it needed to consider. A couple of points to that. And I agree with that. There was, but I think when we look at what happened, you cannot look at this sanction in a vacuum. So I think you have to look back to what the Court was doing prior to this in 2017 and 2019, when it did lay out very clearly to Mr. Akers what the Court's intention was for any future filings. And when you look at particularly the 2019, it's at volume one, I believe page 159, where the Court lays out all of the responsibilities and gives him an opportunity to respond. And when you look at the sanction in this particular case of $40,000, you understand that the Court is simply extending that graduated scale that was set a couple of years in advance. So Judge Rattle wasn't creating something new in this instance. She was simply following through with what she had warned him before. And again, to note, as Judge Phillips and she sort of recognized, this Court sanctioned that sanction from, in their opinion, and in fact warned Mr. Akers that if he continues to do this, we will. So are you contending that therefore it's per se reasonable and the District Court didn't need to discuss reasonableness or ability to pay, and simply just do a one paragraph and we're finished? I think in this instance, that is an argument that can be made. Because again, you cannot look at this situation in a vacuum. I think you have to look at it in the context of what she was doing with him with respect to sanctioning him over a period of time. And so it was simply an extension of that. Again, I think that's a question the Court is going to have to wrestle with, is if you have a situation where you have someone like Mr. Akers who repeatedly files oppressive and vexatious pleadings, whether or not a previous order that sets out the sort of outline of responsibilities, whether or not that carries on to the next sanction, or whether each individual sanction must meet each of these individual factors, which I think raises what Judge Murphy was talking about in the issue of the three factors in Farmer. And I think to answer Judge Phillips, your question about the bad faith issue, Farmer specifically talks about the three predicate responsibilities, but only gets to the issue of the bad faith when it says, depending on the circumstances, the Court may consider other factors, as well, including the extent to which bad faith, if any, contributed to the abuse of conduct. So we understand that Farmer is, of chambers in this instance, and it does sort of lay out these three predicate factors. The Court didn't do that here. We're not going to sit here and tell you that the Court did. Judge Rattle didn't. She simply levied the sanction. But as we argue, it is with, again, with our positions with the inherent authority, the Court, I think, has to understand that Judge Rattle is looking at Mr. Akers, not in the individual sense of that sanction. She's been dealing with him since 2006, so she understands the playing field, as it were, as to how he is being sanctioned. And it simply was, and she had told him in advance of this sanction, I am going to sanction you this amount the next time you do this. So, counsel, I think your position might be a little bit different from the appellant's position in terms of how we interpret the District Court's order here, that the sanction, was it imposed for, in connection with the appeal bond proceeding, or was it imposed because of that plus litigation history? Well, I think it has to be understood. I think it's the only logical conclusion that Judge Rattle reached her decision based upon past history. But she was only sanctioning because of the appeal bond. She certainly wasn't sanctioning him because of the compassionate release motion, which he certainly had the right to file. It was the appeal bond and its failure to really address factors necessary to award an appeal bond. He decided to, again, as we state in our brief, resurrect all of these trivial complaints that he has. And the Court, I think, has to understand those complaints are just outlandish. And it's a waste of the Court's repeated time to have to deal with these issues for the last 18 years with Mr. Akers, who continually complains about issues that the Court has to deal with. In your brief, you describe the motion for appeal bond as wholly frivolous. But that's not what the District Court found, right? I just want to make sure that we're dealing with it with the appropriate finding. Right. And I think, Judge Rossman, you raise a good question. How do you deal with sort of a bifurcated appeal bond or a motion, just a general motion, that both has somewhat wholly frivolous or frivolous and non-frivolous arguments? Judge Rattle came to the conclusion that she believed that some of it was not frivolous. And I think she was talking about the issues in advance of the 355-3A factors, where he sort of begins into his resurrection of all these issues that he wants to talk about. So to the degree that he says he's exhausted his remedies and all of those issues, she found those not to be frivolous. He says he's exhausted. She says he hasn't. So I guess to the degree that when, and not to completely change our position here, I now understand and can appreciate that a motion could be both. But I think Judge Rattle was correct when she said, just because you had some non-frivolous doesn't mean I can't sanction you. Okay, so let me ask you this. If we did not have litigation history in this case, if Mr. Rattle demonstrated himself to be a vexatious litigant, and we had the same finding, partial frivolity, could she impose a sanction here under her inherent authority? She could, but I don't think it would be upheld. Why not? I think she would have to warn him that any future, because I think it's very clear that why she sanctioned him was because of past bad behavior. Because again, you simply can't divorce what she was telling him in 2019, which is, I'm going to anything beyond this is going to be in the $20,000 range and more. And is that because inherent authority requires some showing of bad faith? Abuse of the process kind of bad faith? That's always a difficult question. I think that that's a question that is hard to wrestle with, because like you said, frivolity and bad faith is sort of two sides of the same coin in our opinion, because something that is clearly frivolous in this case. But I think bad faith somewhat necessitates a longer period of abusive behavior, because it shows that I've been, like Mr. Akers, I've been told repeatedly not to do this, and I continue to do it. Clearly bad faith is clearly to harass the court. So I think in a first time instance, you could not establish something sort of bad faith without a future warning of saying, if you do this again, this is how we're going to address the issue. You know, if you were to ask me today whether or not frivolity and bad faith are part and parcel of the same thing, I think it's hard to say that they're not. Wait a minute. If it's a first time filer who files something that's found to be frivolous, that doesn't mean that that person did so in bad faith. But once they are warned, then strike two could be bad faith. That seems to me is the consistent flow of your argument. Right. And if you look on the civil side of the three strikes doctrine, I think that sort of is inherent in that issue too, is that those are always a predator, always are preceded by some warning, as your Honor understood. But this is really a two strike. Well, quite frankly, I think this is a 10 strike with Mr. Akers, given his past history. She has repeatedly told him for many, many years to stop filing claims. And at one point, she had even told him, I think in the 2019 order, you have to file a pre-file motion to even ask us whether or not you can file a substantive motion. And he's repeatedly abused that and continues to file. So in the record, there is some effort to avoid monetary sanctions? Well, in the 2019 order, the judge does both, but she tells him, give me a reason why I shouldn't sanction you. And he comes back with two reasons that she found to be wholly inadequate and went with the sanctions and imposed them. And that's why the reason that she didn't do it here, I certainly can't get into the mind of why Judge Rattle did this without sort of the same roadmap to him in this instance is why he shouldn't be able to explain himself and give an explanation as to why he shouldn't be sanctioned. The only conclusion I could draw was that it was simply an extension of the prior order. But if you look at that 2019, particularly in the 2017 prior order, both of those orders go into a little bit, well, far more detail than the most instant sanction. And the court can sort of draw from that. And again, it's our position, you cannot divorce all three of those instances to say that in this particular case, the court somehow violated this court's precedent by not giving him an ability to respond, whether or not it was reasonable under the circumstances, because it is clearly designed to deter him from doing that. I will be candid with the court, it won't deter him. He will continue to do this. And so the court will have to be faced again with a number of sanctions. So quite frankly, this is a good opportunity to lay the groundwork as to what needs to be done in future cases. So you agree that Farmer applies and we should give the district court an opportunity to wrestle with those factors, right? Yeah, I do. I think it's a good roadmap. And I don't know that you could say that in looking over these cases, it was kind of hard to determine when you look at, and we didn't cite this, but the Tripati case is kind of an interesting case too, because it sort of lays the issue. But you look at cases that are dealing with sanctions, but you're also looking at injunctions versus sanctions. It's hard to find too many cases where there are just sanctions against pro se defendants. You mostly see this in civil litigation. So it's kind of hard to draw some of that. Farmer was clearly civil litigation. We think it's a good roadmap. It certainly lays the groundwork and gives the court all of the responsibilities. I would note in this court's, I think it was the 2020, the April 3rd, 2020 order. In the April 3rd, 2020 order in footnote four, the court lays out where a party is engaging in a pattern of litigation. And again, this is the order to Mr. Akers where you warned him and forced him to file the $500 fee, but warned him to stop doing this. It says, after giving such a litigant notice and an opportunity to respond, we may impose a variety of sanctions, including filing restrictions, monetary penalties, et cetera. So this court was certainly aware in that opinion. But that was about our authority to sanction, right? Right. But I think, I don't know that it should be much different. I mean, I think there's clearly a responsibility on the part of the court to at least give the defendant some opportunity to And again, let me make that very, very clear. Again, we believe that this is an extension from the prior order and that he had an opportunity to respond. He was told this was going to happen and he did it anyway. And that's why we think that is not a violation in this case. But as the court moves forward and establishes a set of criteria and all of these predicate responsibilities, we do believe that Farmer is a good working model for that. But at the same time, I think the court can draw on any number of cases to establish what those are. Now, I would not necessarily say that it has to be, bad faith has to be a predicate, because I think the court would have to establish that Farmers otherwise would have to be overruled in that context or say that it's dicta. So unless the court has any questions, that's the remainder of my time. I'm hesitant to raise an issue that nobody grappled with in the filings. But we have here something that's obvious and that is sanctions do not accomplish the purpose they're intended for. And so going way back in my days as a state trial judge, there are sources, and I think it's when contempt occurs before the court, and I don't know if that means personally or in writing, is it criminal contempt that can occur. And I don't know if you're familiar with, I am not, with that in federal courts. Does that require a proceeding initiated by the prosecution, in this case United States, or can the court order that to happen, or can the court itself initiate that type of proceeding, because no other sanctions are working? That's a wonderful question, and I don't know that I could give you the answer today, because I have not seen contempt in the appellate context where you have someone who is simply filing a pleading. No, I'm talking about at the district court level. Oh, there's an appellate lawyer, you're saying. Well, no, because remember what Mr. Akers is filing are post-conviction motions. So it's either 2255 or 3582C. And so when he's filing, he's filing from a distance. Clearly he is making claims against Judge Frattle and my fellow colleague in the office about just outlandish claims of criminal activity. I think Judge Frattle has taken quite a bit of, or at least had quite a bit of patience to the degree that she has not held him in contempt. But I think from that perspective, she may understand that that would only cause further problems under those circumstances. And when you have a situation like contempt, you would probably have issues about whether or not he needs to appear before the court, which involves BOP doing transport and various things. So again, I can't speak for contemplated the idea of contempt, but to answer the court's question directly, to be responsive, I've not seen that particularly in a post-conviction appeal process, but I couldn't stand here today and say that she could not do that. Thank you. Ms. Donnelly, we'll give you three minutes for rebuttal and hold you to it unless questions carry past. Thank you, Your Honours. I would like to start with the question as to is this conduct sanctionable? The arguments that I've heard from the government are coming from the premise that this is sanctionable conduct to file a motion that in its core is not frivolous. How could you have bad faith if the motion is not wholly frivolous? Therefore, I think we have to go back to that first question. Can you even issue any sanction whether it is relying on the inherent authority or not? And I understand it's a kind of chicken and egg as to can you exercise an authority over pursuant to your inherent authority without a bad faith, yes. But let me answer it in this way. A motion that is not wholly frivolous by definition has not been brought in bad faith. So I would answer that first question that you cannot go there. There shouldn't be an exercise, and I believe the government maybe to some extent agree with me in their argument that you have to have some showing of what did he do this time. Just because he did something in the past where people are dying, he has a condition, the government agrees he has a heart condition, he brings a motion saying people are dying here day in day out. I need out. And other people are getting released on the same basis. We are here because of that motion. And the fact that he says why this is unappealing, you have denied me because I have this history. Maybe our problem is that we are sending him back over and over to the same judge with the same history. That maybe somebody else would acknowledge that some of our prisoners, in fact, do have mental health issues that might bring up issues that we might not consider appropriate or non-frivolous. Does that mean that you're going to take someone who is held in federal prison who might have mental health issues, sanction them over and over with bigger and bigger financial monetary sanctions in the absence of going to the test to make the findings? I don't think that can be. Counsel, in what way then, I think I am understanding your argument to be really focused on this particular filing and the fact that the district court did not find it was wholly does I have any role in a district court's fashioning or deciding to sanction? It takes us from point one to point B. It says yes, sanctions are appropriate. Let's see what is appropriate. My point is that you don't get to point B when the motion is not wholly frivolous. You only get there if his current motion would have been frivolous too. And that would be a continuation of a certain behavior. We don't punish people for past conduct. I see my time as an expert again. I really appreciate the court's time. Okay, thank you both for your arguments. The case is submitted. Counselor excused.